**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alpheus Elite Hamilton, | No. CV-19-05776-PHX-DWL |
| Petitioner, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

On December 10, 2019, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 ("the Petition"). (Doc. 1.) On August 14, 2020, Magistrate Judge Burns issued a Report and Recommendation ("R&R") concluding the Petition should be denied and dismissed with prejudice. (Doc. 13.) Afterward, Petitioner filed objections to the R&R (Doc. 14), Respondents filed a response (Doc. 15), and Petitioner filed a reply (Doc. 16). For the following reasons, the Court will overrule Petitioner's objections, adopt the R&R, and terminate this action.

I.  Background

*The Underlying Crimes.* Approximately one year after moving into the home of his girlfriend, Petitioner began sexually molesting his girlfriend's daughter, who was 12 years old when the abuse began. (Doc. 13 at 1-2.) When the victim reached the age of 14, Petitioner began having sexual intercourse with her. (*Id.* at 2.)

*The Trial.* Petitioner was indicted on two counts of child molestation and five counts of sexual conduct with a minor. (*Id.* at 1.) At trial, the prosecution's evidence

included (1) "the victim's testimony," (2) "a confrontation call in which Petitioner made several incriminating statements," and (3) "evidence that a towel, used to wipe seminal fluid off of Petitioner after sexual activity[] that had been stashed away by the victim, contained Petitioner's DNA and sperm cells, as well as epithelial cell DNA belonging to the victim." (*Id.* at 9.) Meanwhile, Petitioner's "theory of defense was that the victim falsely accused him in retaliation because he was 'disciplining her, . . . not allowing her to run free . . . [and] be alone with her boyfriend,' and 'put[ting] those rules down hard.'" (*Id.* at 2.)

The first three days of trial were uneventful. (*Id.* at 5.) During that period, the parties selected a jury, presented opening statements, and completed the direct, cross, and redirect examination of two witnesses. (*Id.*) Additionally, the prosecution started its direct examination of its third witness, the victim's mother, but did not complete its examination before the weekend recess. (*Id.*)

On Friday, January 22, 2016—the first day of the weekend recess—Petitioner's counsel, Mr. Carr, suffered a concussion during a car accident. (*Id.*) As a result, the judge did not hold trial on the next scheduled trial day, which was Monday the 25th. (*Id.*) On Tuesday the 26th, the judge held a telephonic status conference during which Mr. Carr provided assurance that he would be "ready to fully and adequately participate" on Thursday the 28th. (*Id.* at 5-6.) Based on that assurance, the judge did not hold trial on the 26th or 27th. (*Id.*)

On the morning of the 28th, the judge engaged in a lengthy colloquy with Mr. Carr concerning his condition. (*Id.* at 6-7.) The full colloquy is set forth in the R&R. (*Id.*) In a nutshell, Mr. Carr initially told the judge he was "going to give it everything I have," the judge then clarified that "You need to tell me that you're ready to proceed at a level of 100 percent, Mr. Carr. I can't accept less," and Mr. Carr responded by providing assurance that "[t]hat's what my client is going to get, your Honor. If I drop below that, I'll let the Court know." (*Id.*) Based on those assurances, and after clarifying that "just for the record, if I happen to observe anything that makes me believe that maybe you're not yourself, I'm

going to make a record of that as well," the judge allowed trial to resume. (*Id.*)

The direct examination of the victim's mother appeared to proceed uneventfully, with Mr. Carr making one objection. (*Id.* at 7.) However, during a recess before cross-examination was scheduled to begin, Mr. Carr reported that although he felt "a lot better than [he] did at the beginning of the week," he was feeling nauseous and light-headed and "was having trouble paying attention during the direct of the witness right now." (*Id.*) After further discussion with Mr. Carr and the prosecutor, the judge agreed to adjourn the case for the weekend, to provide Mr. Carr with a transcript of the victim's mother's direct examination (so Mr. Carr could review it over the weekend), and to allow Mr. Carr to raise any objections to the victim's mother's testimony when trial resumed the following week. (*Id.* at 7-8.) Mr. Carr agreed to this proposal and clarified that he would not be seeking a mistrial. (*Id.* at 8.)

Trial resumed on Tuesday, February 2. At the outset, and before the jury was brought in, Mr. Carr assured the judge that he was feeling "[a] hundred percent," verified that he had reviewed the transcript over the weekend, and stated that he did not have any further objections to the victim's mother's testimony. (*Id.* at 13.) Mr. Carr then proceeded to cross-examine the victim's mother. (*Id.*) At no point during that cross-examination, or during the remaining three days of trial, did the judge express any concerns about Mr. Carr's mental acuity or ability to represent Petitioner. (*Id.*)

The jury returned guilty verdicts on the same day the parties presented closing argument. (*Id.* at 9.) Petitioner was later sentenced to a combination of concurrent and consecutive sentences totaling 37 years in prison. (*Id.* at 1.)

*The Direct Appeal.* In his direct appeal, Petitioner argued (1) the trial judge erred by admitting certain expert testimony concerning the characteristics of children who have experienced sexual abuse and (2) the prosecutor improperly vouched for the victim's credibility. (*Id.* at 2.)

On August 24, 2017, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (*Id.*) As discussed in more detail *infra*, Petitioner did not seek review in

the Arizona Supreme Court. (*Id.*)

*PCR Proceedings*. On August 29, 2017, Petitioner filed a timely notice of post-conviction relief ("PCR"). (*Id.*) Petitioner's appointed counsel thereafter filed a PCR petition arguing that Petitioner received ineffective assistance of counsel due to Mr. Carr's concussion. (*Id.*) Petitioner also submitted a declaration from Mr. Carr, which was not signed under penalty of perjury. (*Id.* at 2-3 & n.1.) In the declaration, Mr. Carr stated that "the effects of the concussion made it impossible for me to effectively prepare for witnesses and to continue trial, even though I told the court I was ready," that "[t]he effects were so severe, it made it impossible for me to pay attention during the direct examination of some of the witnesses," and that "[i]n hindsight, I believe that as a result of my concussion and its after effects, I was unable to effectively represent [Petitioner] during his trial and a mistrial should have been granted." (Doc. 10-7 at 158-59.)

On August 7, 2018, the trial court issued an order summarily denying Petitioner's PCR petition because "Petitioner has not established a colorable claim of ineffective assistance of counsel." (Doc. 13 at 3.)

On January 31, 2019, the Arizona Court of Appeals granted review but summarily denied relief. (*Id.*)

On October 23, 2019, the Arizona Supreme Court denied review. (*Id.*)

*The Petition*. On December 10, 2019, Petitioner filed the Petition. (Doc. 1.) It asserts one ground for relief—a claim of ineffective assistance of counsel premised on Mr. Carr's concussion. (Doc. 13 at 3.)

*The R&R*. The R&R concludes the Petition should be denied and dismissed with prejudice. As an initial matter, the R&R states that *Strickland v. Washington*, 466 U.S. 668 (1984), rather than by *United States v. Cronic*, 466 U.S. 648 (1984), "provides the appropriate analytical framework" for assessing Petitioner's ineffective assistance claim—and, thus, Petitioner must establish that his counsel's deficient performance was prejudicial in lieu of relying on *Cronic*'s presumption of prejudice. (Doc. 13 at 10-12.)

Applying *Strickland*, the R&R concludes that Petitioner's ineffective assistance

claim fails because (1) Petitioner did not attempt "to identify any specific errors or omissions that occurred as a result of [Mr. Carr's] condition," (2) although Mr. Carr's declaration purports to make an admission of deficient performance, courts are not required to accept such admissions and the admission here is belied by the record, which shows that Mr. Carr never raised any concerns about his acuity apart from during the last 30 minutes of the victim's mother's direct examination, and (3) "Petitioner has failed to draw any connection between [Mr. Carr's] head trauma and any specific errors or omissions which prejudiced his defense." (*Id.* at 12-13.)

II. Legal Standard

A party may file written objections to an R&R within fourteen days of being served with a copy of it. Rules Governing Section 2254 Cases 8(b) ("Section 2254 Rules"). Those objections must be "specific." *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

District courts are not required to review any portion of an R&R to which no specific objection has been made. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 149-50 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise."). Thus, district judges need not review an objection to an R&R that is general and non-specific. *See, e.g., Warling v. Ryan*, 2013 WL 5276367, *2 (D. Ariz. 2013) ("Because de novo review of an entire R & R would defeat the efficiencies intended by Congress, a general objection 'has the same effect as would a failure to object.'") (citations omitted); *Haley v. Stewart*, 2006 WL 1980649, *2 (D. Ariz. 2006) ("[G]eneral objections to an R & R are tantamount to no objection at all.").[1]

---

[1] *See generally* S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, Rule 72, at 422 (2018) ("A party who wishes to object to a magistrate judge's ruling must make specific and direct objections. General objections that do not direct the district court to the issues in controversy are not sufficient. . . . [T]he objecting party must

- 5 -

III. <u>Analysis</u>

    A. **The Parties' Arguments**

Petitioner raises two objections to the R&R. (Doc. 14.) First, Petitioner objects to the R&R's statement that he "failed to file a petition for review in the Arizona Supreme Court." (*Id.* at 2.) According to Petitioner, he "clearly filed a timely petition." (*Id.*) Second, Petitioner objects to the R&R's rejection of his ineffective assistance claim, arguing that he "clearly showed and proved his Attorney was not in his right state of mind due to his head trauma" and that the R&R "failed to point out the Attorney passed out [during] the direct examination of a witness." (*Id.*) Petitioner also contends that, "due to his attorney['s] head injury [on] day three of trial, he was denied effective assistance of counsel through the remaining proceeding." (*Id.* at 3.)

In their response, Respondents argue that Petitioner's first objection lacks merit because the state-court records reveal that Petitioner failed to file a petition for review with the Arizona Supreme Court during his direct appeal. (Doc. 15 at 3-4.) Respondents speculate that Petitioner may be confusing his direct appeal with his PCR proceeding (in which he did file a petition for review with the Arizona Supreme Court) and contend this issue is, in any event, irrelevant because the presence or absence of a petition for review has no bearing on Petitioner's entitlement to habeas relief. (*Id.*) As for Petitioner's second objection, Respondents argue that the R&R correctly declined to apply *Cronic* and that Petitioner still has not attempted to identify any specific errors that were prejudicial to him. (*Id.* at 4-6.)

In reply, Petitioner reiterates his assertion that Mr. Carr "passed out" during trial and argues that *Cronic* should be deemed applicable. (Doc. 16 at 1-2.)

    B. **Discussion**

Petitioner's first objection to the R&R is easily rejected. On November 14, 2017, the Arizona Supreme Court issued an order stating that, because Petitioner had sought and obtained an extension of the deadline to file a petition for review in his direct appeal but

specifically identify each issue for which he seeks district court review . . . .").

then failed to "file[] a petition by that date," "IT IS ORDERED dismissing this matter." (Doc. 10-7 at 123.) Given this backdrop, the R&R's statement that "Petitioner failed to file a petition for review in the Arizona Supreme Court" (Doc. 13 at 2) is accurate.

Petitioner's second objection to the R&R also lacks merit. As an initial matter, Petitioner's assertion that Mr. Carr "passed out" during trial is unfounded. Petitioner does not identify any portion of the record supporting this assertion, Mr. Carr's declaration does not state that he ever "passed out" during trial, and the trial transcript suggests that Mr. Carr was awake (albeit nauseous and light-headed) during the final portion of the victim's mother's direct examination.

The Court also agrees with, and accepts, the R&R's determination that *Cronic*'s presumption of prejudice does not apply under the circumstances of this case. The R&R's analogy to cases involving attorneys suffering from mental illness is an apt one and there is ample authority that *Cronic*'s presumption of prejudice does not arise in such cases. *See, e.g., Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000) ("The mere fact that counsel may have suffered from a mental illness at the time of trial . . . has never been recognized by the Supreme Court as grounds to automatically presume prejudice. . . . [E]ven if [counsel] had been in the early stages of Alzheimer's at the time of Dows's trial, this alone is not sufficient for a per se reversal of Dows's conviction by a jury."); *Smith v. Ylst*, 826 F.2d 872, 876 (9th Cir. 1987) ("Although there is merit to the argument that a mentally unstable attorney may make errors of judgment that are essentially unidentifiable by a reviewing court, it is reasonable to treat such cases under the general rule requiring a showing of prejudice. Rather than attempt to identify mental illnesses that would presumptively disable an attorney from conducting a criminal defense we believe it is more prudent to evaluate the attorney's actual conduct of a trial in light of allegations of mental incompetence."). *See also United States v. Thomas*, 417 F.3d 1053, 1057 (9th Cir. 2005) ("*Cronic*'s exception for failing to test the prosecution's case applies when the attorney's failure to oppose the prosecution goes to the proceeding as a whole—not when the failure occurs only at specific points in the trial.") At a minimum, Petitioner has not identified

any case suggesting the *Cronic* presumption *should* apply under these factual circumstances, and the absence of such precedent makes it difficult to see how the Arizona courts' rejection of Petitioner's ineffective assistance claim could be deemed contrary to, or an unreasonable application of, clearly established law.

Finally, the Court also agrees with, and accepts, the R&R's conclusion that Petitioner is not entitled to relief under *Strickland*. Petitioner does not purport to identify any specific errors by Mr. Carr or purport to explain how those unspecified errors were prejudicial to him. Tellingly, Mr. Carr was still able to make an objection during the victim's mother's direct examination. Additionally, the evidence of Petitioner's guilt, which included incriminating statements made during a confrontation call and inculpatory DNA evidence, was strong.

Accordingly, **IT IS ORDERED** that:

(1) Petitioner's objections to the R&R (Doc. 14) are **overruled**.

(2) The R&R's recommended disposition (Doc. 13) is **accepted**.

(3) The Petition (Doc. 1) is **denied and dismissed with prejudice**.

(4) A Certificate of Appealability and leave to proceed *in forma pauperis* on appeal are **denied** because Petitioner has not made a substantial showing of the denial of a constitutional right.

(5) The Clerk shall enter judgment accordingly and terminate this action.

Dated this 5th day of October, 2020.

Dominic W. Lanza
United States District Judge